UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JERAMIE CARLSSON,<br><br>      Plaintiff,<br><br>  v.<br><br>BYRON CRAGG, *et al.*,<br><br>      Defendants. | 3:14-cv-00091-MMD-VPC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Pending before the court are defendants' motions for summary judgment (#s 45, 47). Plaintiff opposed (#50), and defendants replied (#s 52, 53). Having reviewed the record and papers, the court recommends that summary judgment be denied.

      **I.**      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Jeramie Carlsson ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and currently housed at Ely State Prison in Ely, Nevada. Acting *pro se*, and pursuant to 42 U.S.C. § 1983, plaintiff filed a complaint (#1) on February 2, 2014, asserting civil rights claims against the following Reno Police Department ("RPD") and Sparks Police Department ("SPD") officers: Byron Cragg ("Cragg"), Ryan Connelly ("Connelly"), K.G. Gallop ("Gallop"), J. Johnson ("Johnson"), and S.D. Tracy ("Tracy").

On December 2, 2014, the District Court screened the complaint and allowed plaintiff to proceed on just the Eighth Amendment claim (#10). Defendants filed a motion to dismiss (#15), arguing that plaintiff's allegations of excessive force during his arrest do not properly state an Eighth Amendment claim. Before a decision was issued, plaintiff moved to file a first amended complaint ("FAC") (#27) to instead assert a Fourth Amendment excessive force claim; the court granted plaintiff's motion (#34). In addition, upon consideration of defendants' other arguments in

1  favor of dismissal, the court ordered that plaintiff's official capacity claims be dismissed against all
2  defendants (#s 36, 41). Thus, at present plaintiff asserts a Fourth Amendment excessive force claim
3  against Cragg, Connelly, Gallop, Johnson, and Tracy, in their individual capacities.

4  The events giving rise to plaintiff's claim are as follows. On May 9, 2012, plaintiff, driving
5  with two passengers, crashed a Ford Escape into a large boulder next to the Truckee Meadows
6  Community College ("TMCC") parking lot. (#50 at 5.) Plaintiff asked a TMCC student for a ride
7  to the store in the student's truck, but the student declined. (*Id.*) Nevertheless, plaintiff instructed
8  his companions to load what appeared to be leather rifle cases and a motorcycle helmet into the
9  truck bed, punched the student in the eye, and pulled the student from the truck. (#45 at 9; #47-1 at
10 2.) The student noted described plaintiff as acting as if he had a gun tucked into his waistband.
11 (*Id.*) Plaintiff and his companions drove away, and the student called the police. (*Id.* at 3.)

12 Plaintiff abandoned the student's Ford Escape at a mobile home community in Reno and,
13 switching to a Buick[1], drove to the Western Village Motel in Sparks, Nevada. (#45 at 11.) From
14 there, a high speed chase with SPD officers ensued. (*Id.*) Disregarding stop signs, plaintiff drove
15 through an apartment complex, residential area, and active school zone at approximately fifty miles
16 per hour. (*Id.*) Ultimately, he escaped. Police officers located the abandoned Buick an hour later
17 in Spanish Springs, Nevada. (*Id.* at 12.) Three firearms, two of them stolen, were found nearby.
18 (*Id.*)

19 Police officers also located, detained, and questioned Michael Mulkey ("Mulkey"), who fit
20 the description of a passenger in the Buick during the high speed chase. (*Id.*) Mulkey told
21 defendant Gallop that he had been in plaintiff's car that morning at TMCC, and remained with
22 plaintiff until they arrived in Spanish Springs. (*Id.* at 13.) Mulkey also told Gallop that plaintiff had
23 a semi-automatic pistol in his waistband during the high speed chase, and that he had declared he
24 would shoot anyone who got in his way. (*Id.*)

---

27 [1] Plaintiff claims he borrowed the Buick (#50 at 6), but defendants describe it as stolen (#45 at 10).

The following day, May 10, 2012, officers from the RPD, SPD, and Washoe County Sheriff's Office were told that plaintiff was wanted in connection with a carjacking, felony eluding, and several recent vehicle thefts, and that he was believed to be carrying a handgun. (#47 at 4.) A plan was set into motion whereby a woman, cooperating with the three police departments, would lure plaintiff to her room at La Quinta Inn. (#45 at 14; #50 at 7.) Plaintiff arrived at approximately 9:45 p.m. (#47 at 4.) From this point, accounts diverge.

According to defendants, plaintiff began to flee when he was approached by police officers, despite their identifying clothing and repeated orders to stop. (#45 at 14–15; #47 at 4.) While being chased by defendant Cragg, plaintiff reached and climbed over the fence dividing La Quinta and an Interstate 580 off-ramp. (*Id.*) Plaintiff was carrying a backpack, and briefly hid in the bushes on the other side of the fence; officers were concerned he may have been retrieving a weapon. (#47-11 at 3.) Plaintiff ignored Cragg's order to show his hands and stand up. (*Id.*)

When plaintiff continued to run towards the off-ramp, RPD Officer Jones deployed a rubber projectile and a police canine was hoisted over the fence. (#45 at 15; #47 at 5.) Plaintiff briefly fell upon impact of the projectile, and again when he was struck by the canine. (*Id.*) Plaintiff made a gesture towards the canine, at which point Cragg observed that plaintiff was holding a knife in his right hand. (#47-11 at 3.) Cragg and RPD Officer Lancaster reached plaintiff on the shoulder of the off-ramp, and grabbed plaintiff's arms. (#47 at 5.) With plaintiff in a control hold, Cragg ordered plaintiff to drop the knife. (*Id.*) Again, plaintiff refused the order; Lancaster and Connelly began delivering "distractive blows" to help disarm him. (*Id.*; #47-12 at 4.) Cragg thereby increased the force of his hold, breaking plaintiff's arm, and Gallop kicked the knife away once it dropped to the pavement. (#47 at 5; #47-11 at 4; #45-6 at 9.) The officers were then able to handcuff plaintiff and take him into custody. (#47 at 5.) Connelly attempted to photograph plaintiff's injuries once they had moved to a safe area, but he was forced to forgo his efforts when plaintiff spit on his wrist and arm. (#47-12 at 4.)

Curiously, plaintiff offers two versions of the events that transpired, one in the FAC and one in opposition to defendants' motions.[2] According to his opposition, plaintiff ran from La Quinta Inn and towards the freeway because "he got a funny feeling" that he was being set up to be robbed. (#50 at 7.) He contends that was not aware of the officers' presence at the scene until he was struck by the rubber projectile. (#50 at 7.) The FAC, however, is more consistent with the facts put forth by defendants. There, plaintiff explains that he began to run from the Inn upon encountering police officers outside. (#35 at 4.) "While plaintiff was eluding the majority of polic[e] officers, Officer Gallop was in pursuit of plaintiff, and as plaintiff jumped a chain-link fence, Officer Gallop jumped it right behind him." (*Id.*) In any event, in both filings plaintiff contends that he was immobilized by the rubber projectile, and non-combatant from that point forward. (*Id.*; #50 at 8.) The canine was then deployed, although plaintiff was lying immobile on the ground; the dog bit him several times in the leg. (#35 at 5; #50 at 8.) Once plaintiff's arms had been handcuffed behind his back, Cragg, Connelly, Gallop, Johnson, and Tracy began to kick and beat his head, face, and body, until he was in a state of semi-consciousness. (*Id.*) Plaintiff's right forearm was broken when Gallop and Johnson lifted plaintiff by the handcuffs, and Cragg jumped on plaintiff's arm "using all of his body weight." (#35 at 5.) The officers continued to beat plaintiff for several minutes thereafter. (*Id.*) Plaintiff was eventually taken by an ambulance to Renown Medical Center, where he received stitches and a temporary cast. (#50 at 9.)

Notably absent from plaintiff's version of events is the knife. Plaintiff denies that he brandished a knife or any other weapon towards the officers, and suggests that defendants are lying with regard to the knife they allegedly found. (#50 at 2, 10.) Nevertheless, plaintiff was indicted of and pled guilty to the crime of Resisting and/or Obstructing and/or Delaying a Public Officer with a Deadly Weapon, a violation of Nev. Rev. Stat. § 199.280, for "holding and/or wielding [a] knife in

---

[2] Plaintiff signed both the FAC and opposition and declared under penalty of perjury that the allegations set forth were true and correct. (*See* #35 at 8; #50 at 1.)

1  a threatening matter" while Connelly, Cragg, and Jones were "discharging and/or attempting to
2  discharge a legal duty of their office." (#47-9; #47-10.)

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any reasonable

1 inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v.*
2 *Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

3 Where the moving party meets its burden, the burden shifts to the nonmoving party to
4 "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle*
5 *Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "This burden is not a light one," and requires
6 the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact,
7 the non-moving party must come forth with evidence from which a jury could reasonably render a
8 verdict in the non-moving party's favor." *Id.* (internal citation and quotation omitted). The
9 nonmoving party may defeat the summary judgment motion only by setting forth specific facts that
10 illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248;
11 *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence,
12 Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the
13 material facts" will not defeat a properly-supported and meritorious summary judgment motion,
14 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

15 For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in
16 motions and pleadings are admissible to the extent that they are based on personal knowledge and
17 set forth facts that would be admissible into evidence, and the litigant attested under penalty of
18 perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

19 **III.   DISCUSSION**

20 Defendants advance three arguments in favor of summary judgment: (1) plaintiff's claims,
21 to the extent they are based on the assertion that he neither resisted arrest nor wielded a knife, are
22 barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) the force used was reasonable under the
23 circumstances and, therefore, no constitutional violation occurred; and (3) defendants are shielded
24 from liability by the doctrine of qualified immunity. The court considers each argument in turn.

25
26
27

**A.      Plaintiff's excessive force claims are not barred by *Heck*, except as they relate to use of the canine.**

Pursuant to *Heck v. Humphrey*, 512 U.S. at 486–87, a § 1983 action that challenges the validity of a plaintiff's criminal conviction or confinement is not cognizable unless the plaintiff can prove that his or her sentence has been reversed, expunged, declared invalid, or called into question by the issuance of a writ of habeas corpus. "*Heck*, in other words, says that if a criminal conviction stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996). Conversely, if success on the merits would not necessarily demonstrate the invalidity of the conviction or confinement, the action may proceed. *Heck*, 512 U.S. at 487. Plaintiff's plea to violating Nev. Rev. Stat. § 199.280 is considered a conviction for purposes of *Heck*. *See Kyles v. Baker*, 72 F. Supp. 3d 1021, 1034 (N.D. Cal. 2014); *Diggs v. Las Vegas Metro. Police Dep't*, No. 2:09–cv–02339–RLH–CWH, 2015 WL 3994926, at *4 (D. Nev. June 30, 2014). Thus, the issue is whether plaintiff's success in proving that some or all of the defendants used excessive force against him would render that conviction invalid.

In *Smith v. City of Hemet*, 394 F.3d 689, 696 (9th Cir. 2005), the Ninth Circuit considered a § 1983 action in which the defending police officers argued, as defendants do here, that *Heck* barred the plaintiff's excessive force claim because the lawfulness of the arrest "was determined in the criminal action in which he voluntarily pled guilty." Defendants reasoned that a finding of excessive force would "necessarily imply the invalidity of his criminal conviction under § 148(a)(1)."[3] *Id.* The court agreed that, if the plaintiff had pled guilty to resisting arrest based on

---

[3] Cal. Penal Code § 148(a)(1) codifies California law on resisting arrest, making punishable the act of resisting, delaying, or obstructing a public officer "in the discharge or attempt to discharge any duty of his or her office or employment." California courts have determined that "the lawfulness of the officer's conduct is an essential element of the offense . . . ." *Smith*, 394 F.3d at 695. Thus, "[a] conviction for resisting arrest under § 148(a)(1) may be lawfully obtained only if the officers do not use excessive force *in the course* of making that arrest." *Id.* As far as this court is aware, Nevada courts have not explicitly found the lawfulness of the officer's conduct to be an element of Nev. Rev. Stat. § 199.280. Nevertheless, given the provision's language with regard to the officer's "legal duty," the court is persuaded that § 199.280 encompasses a similar requirement.

actions taken during the course of the arrest, his suit would be barred by *Heck*. *Id.* Success on the merits "would necessarily mean that the officers had used excessive force to subdue him and were therefore acting unlawfully at the time his arrest was effected," rendering the § 148(a)(1) conviction wrongful. *Id.* If, however, the excessive force alleged "occurred *subsequent* to the conduct on which his conviction was based," *Smith* held that *Heck* would permit the claim to proceed. *Id.* at 698. "Any other rule would mean that 'once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages.'" *Wilson v. City of Long Beach*, 567 Fed. App'x 485, 487 (9th Cir. 2014) (Watford, J., dissenting) (quoting *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006)). Accordingly, to determine whether the bar of *Heck* applies, the court must consider whether it is reasonable to infer that the plaintiff's "conviction and excessive force claims are 'based on different actions.'" *Kyles*, 72 F. Supp. 3d at 1037 (quoting *Hooper v. City of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011)); *see also Beets v. Cnty. of Los Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2012) (*Heck* does not preclude an excessive force claim where the force is "distinct temporally or spatially from the factual basis for the person's conviction"); *Sanford v. Motts*, 258 F.3d 1117, 1120 (9th Cir. 2001). This requires the court to look at the factual basis for the underlying guilty plea. *See Smith*, 394 F.3d at 698–99.

In this case, the indictment preceding plaintiff's guilty plea demonstrates that his conviction under Nev. Rev. Stat. § 199.280 was based on his May 10, 2012 act of resisting, obstructing, or delaying public officers—namely, Connelly, Cragg, and Jones—in their attempts to discharge a legal duty, by holding or wielding a knife in a threatening manner. (#47-9 at 4.) Based on the record, the court must assume the conviction is in keeping with defendants' allegations that plaintiff resisted the officers with a knife while they were attempting to subdue him on the freeway off-ramp. Plaintiff attempts to justify his acceptance of the plea, but has not shown that it was invalidated, or that it was predicated on some alternative factual scenario. (*See* #50 at 10–11.) As a consequence, plaintiff's claims are barred if success in the instant action would call into question the lawfulness of defendants' actions in countering plaintiff's resistance.

The FAC describes three instances of excessive force: (1) defendants deployed the canine after plaintiff was on the ground and non-resistant to arrest, and which resulted in multiple lacerations; (2) Cragg, Connelly, Gallop, Johnson, and Tracy beat and kicked plaintiff after he was secured in handcuffed; and (3) Cragg jumped on plaintiff's arm after plaintiff was in handcuffs, causing the arm to break. Accepting plaintiff's allegations as true, the first of these instances occurred while officers' attempts to arrest plaintiff were ongoing, as plaintiff admits that he was not yet in handcuffs. As a consequence, a finding by the jury that defendants' use of the canine amounted to excessive force would necessarily mean that defendants were acting unlawfully in the course of subduing him. Supposing that the lawfulness of the officers' conduct is an element of Nev. Rev. Stat. § 199.280, such a finding would clearly undermine plaintiff's conviction. As a consequence, plaintiff may not pursue the theory that use of the canine constituted excessive force.

The second and third instances of force, in contrast, are temporally distinct from plaintiff's initial resistance to arrest, and, therefore, to his conviction. In plaintiff's version of events, it was only *after* the handcuffs were secured that he was beaten, kicked, and jumped upon. A successful § 1983 action challenging those uses of force would not necessarily negate plaintiff's conviction for resisting or obstructing defendants' lawful performance while effecting the arrest. Thus, while *Heck* precludes plaintiff's canine related claims, it does not bar plaintiff from raising a challenge to defendants' later actions.

**B.    Whether defendants' use of force was reasonable is a question of fact for the jury.**

In the context of an arrest, the use of excessive force is analyzed for a violation of the Fourth Amendment's protection "against unreasonable seizures of the person." *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). The relevant inquiry is whether the police officer's use of force was objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. A reviewing court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tolan v. Cotton*, — U.S. —, 134 S. Ct. 1861, 1865 (2014) (internal quotation omitted). "Stated another way, [the court] must balance the

1  amount of force applied against the need for that force." *Bryan v. MacPherson*, 630 F.3d 805, 823–
2  24 (9th Cir. 2010).  In so doing, the court must allow "'for the fact that police officers are often
3  forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly
4  evolving—about the amount of force that is necessary in a particular situation.'" *Glenn v. Wash.*
5  *Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham*, 490 U.S. at 396–97).

6  The reasonableness analysis involves three steps.  *Id.*  First, the court weighs the gravity of
7  the Fourth Amendment intrusion according to the "type and amount of force inflicted." *Id.* (internal
8  quotation omitted); *see also Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (the court
9  must consider the "quantum of force used to arrest the plaintiff"). Second, the court evaluates the
10 government's interest in the use of force.  *Glenn*, 673 F.3d at 871.  In *Graham*, the Supreme Court
11 identified three factors for consideration: (1) the severity of the crime, (2) the threat the plaintiff
12 posed to the safety of the officers or others, and (3) whether the plaintiff actively resisted or
13 attempted to evade arrest.  490 U.S. at 396.  Third, the court balances the gravity of the intrusion
14 against the need for that intrusion.  *Glenn*, 673 F.3d at 871.  "When the governmental interests at
15 stake are substantial, a greater intrusion upon the Fourth Amendment rights of the person may be
16 justified.  Conversely, when the governmental interest is insubstantial, the application of even
17 minimal force may be unreasonable." *Nelson v. City of Davis*, 685 F.3d 867, 878 (9th Cir. 2012).
18 Because the balancing test in excessive force cases "nearly always requires a jury to sift through
19 disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on
20 many occasions that summary judgment . . . should be granted sparingly." *Santos v. Gates*, 287
21 F.3d 846, 853 (9th Cir. 2002).

22 In this case, viewing the evidence in the light most favorable to plaintiff, the intrusion on
23 plaintiff's Fourth Amendment rights was considerable.  Plaintiff avers that, after he became non-
24 resistant, was in handcuffs, and was lying on the ground, his face, head, and body were repeatedly
25 beaten and kicked by Cragg, Connelly, Gallop, Johnson, and Tracy, "for what [he] believes to [have
26 been] several minutes . . . ," rendering him semi-conscious. (#35 at 5.)  Post-arrest photographs of
27

plaintiff's face show cuts and bruising.[4] (#45-1 at 9, 11.) Kicking and punching a subdued suspect is considered to be more than a minimal use of force. *See Lolli v. Cnty. Of Orange*, 351 F.3d 410, 417 (9th Cir. 2003); *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007). Plaintiff also contends that, amidst the kicking and beating, Gallop and Johnson lifted him into the air and Cragg jumped on his arm, causing a severe break that later required surgery, a metal plate, and screws. (#50 at 4.) Defendants submit sworn affidavits stating that the described beatings never occurred, and that plaintiff's arm was broken as Cragg applied a hold to wrest the knife from plaintiff's control. (#45-6 at 10; #45-9 at 4; #45-10 at 6; #47-11 at 4.) However, there is sufficient evidence, in the form of plaintiff's sworn statements, to allow a reasonable juror to believe plaintiff's version of events. Thus, it is the level of force described by plaintiff that the court must use to assess whether defendants' actions were constitutionally permissible.

The court next turns to the governmental interests identified in *Graham*, beginning with the severity of plaintiff's crimes. Plaintiff does not dispute that he was wanted for a recent and violent carjacking, that he had stolen other vehicles, that he had led police on a high speed chase, and that he was believed to be a felon in possession of a handgun. The government has a strong government interest in apprehending criminals, particularly those who are suspected of felonies. *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (citing *United States v. Hensley*, 469 U.S. 221, 229 (1985)). Thus, this factor favors the government.

The second *Graham* factor, whether plaintiff "posed an immediate threat to the safety of the officers and others," is the most important. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (internal quotation omitted). At first blush, this factor weighs heavily in favor of the government. The record clearly demonstrates that plaintiff posed a serious threat prior to his arrest. Defendants had been briefed with regard to plaintiff's suspected crimes, and were told he was believed to be

---

[4] Contrary to defendants' assertions (#45 at 22), plaintiff need not produce medical records to establish a claim. *See Santos*, 287 F.3d at 855 (while minor injuries may indicate a minor use of force, in other cases "the intrusion may be substantial even though the injuries are minor"); *Koiro v. Las Vegas Metro. Police Dep't*, 69 F. Supp. 3d 1061, 1069 (D. Nev. 2014) ("[T]hat [plaintiff] was not treated for any injuries does not necessarily mean that the force used was minimal.").

-11-

carrying a handgun. They were reasonably concerned that plaintiff would retrieve the weapon from his backpack or waistband in an attempt to escape arrest. Contrary to plaintiff's assertions, it is irrelevant that no gun was actually found in his possession; the court must consider the threat "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. In addition, plaintiff's chosen escape route was up a freeway off-ramp. Given that the arrest transpired at approximately ten o'clock in the evening, when visibility would have been low, plaintiff posed an additional threat to unsuspecting drivers exiting the freeway.

Still, the court must keep in mind plaintiff's allegations of excessive force exerted *after* he was fully compliant, surrounded by police officers, and lying on the ground with his arms handcuffed behind his back. Were plaintiff to prove such facts at trial, a reasonable jury could infer that the threat posed to the officers and others was substantially reduced. *See Drummond v. City of Anaheim*, 343 F.3d 1052, 1057–58 (9th Cir. 2003). As such, the weight afforded to this factor is reduced.

With regard to *Graham*'s final factor, it is undisputed that plaintiff evaded arrest on May 9, 2012 by leading police on a high speed chase, and that on May 10 he attempted to flee again. The court must also accept, in light of *Heck v. Humphrey*, that plaintiff used a knife to resist the officers who confronted him on the freeway off-ramp. However, the parties disagree as to the extent and duration of plaintiff's resistance. Defendants allege that their escalating use of force was justified by plaintiff's ongoing struggle with the knife as they attempted to secure his arms and place him in handcuffs. In plaintiff's version, he was subdued and non-resistant at the time excessive force was used. Therefore, while the third *Graham* factor tilts towards the government, it does not do so decisively.

Based on these various considerations, and viewing the evidence in the light most favorable to plaintiff, the court cannot say at this juncture that the governmental interests at stake outweighed the intrusion on plaintiff's Fourth Amendment rights caused by defendants post-handcuffing uses of force. The balancing here "turns on which of two conflicting stories best captures what happen[ed] on the street . . . ." *Saucier v. Katz*, 533 U.S. 194, 216 (2001) (Ginsburg, J., concurring). In such

1  situations, "*Graham* will not permit summary judgment in favor of the defendant official." *Id.*; *see*
2  *also Santos*, 287 F.3d at 853.

3  **C.     Defendants are not entitled to qualified immunity.**

4  "Qualified immunity protects government officials from civil damages 'insofar as their
5  conduct does not violate clearly established statutory or constitutional rights of which a reasonable
6  person would have known.'" *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013) (quoting
7  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The doctrine operates to ensure "that 'officers are
8  on notice their conduct is unlawful' before being subjected to suit." *Tarabochia v. Adkins*, 766 F.3d
9  1115, 1121 (9th Cir. 2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  The qualified
10 immunity inquiry has two steps, in which the court first asks "whether the facts alleged show the
11 official's conduct violated a constitutional right," and then, if the answer is yes, "whether the right
12 was clearly established as of the date of the involved events and in light of the specific context of
13 the case." *Id.* (internal quotation omitted).  The requirement that a right be clearly established "does
14 not mean that the very action at issue must have been held unlawful," *Blankenhorn*, 485 F.3d at
15 481, but "existing precedent must have placed the statutory or constitutional question beyond
16 debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2083 (2011).

17 Defendants argue that they are immune from liability because there is no precedent
18 prohibiting the use of approved "hands on" control maneuvers when confronting a suspect with a
19 knife. (#47 at 12.)  However, since *Graham* it has been well-established that "force is only justified
20 when there is a need for force." *Blankenhorn*, 485 F.3d at 481.  Defendants are entitled to qualified
21 immunity only so long as their version of the facts is accepted as true; accepting plaintiff's
22 allegations, the need for force had waned, and *Graham* put defendants on notice that kicking,
23 beating, and jumping on plaintiff was constitutionally impermissible.  *See id.*; *Kyles*, 72 F. Supp. 3d
24 at 1041–42 (defendants were "on notice that a calm and nonresisting suspect . . . could not be
25 forced to the ground and repeatedly struck"); *Ramirez v. City of Hayward*, 2015 WL 4880976, at
26 *13 (N.D. Cal. Aug. 14, 2015) ("[I]n plaintiff's version of the facts, it would be clear to a
27 reasonable officer that it is not justified to handle a citizen who is not behaving aggressively or in a

threatening manner by throwing him to the ground, getting on top of him, and punching him."). Accordingly, because defendants' "entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor," qualified immunity is not warranted at this time. *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003); *Espinosa v. City & Cnty. Of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010) (unresolved issues of fact were material to the reasonableness of the officers' belief in the legality of their actions, and precluded summary judgment).

### IV.   CONCLUSION

Based upon the foregoing, the court concludes that defendants Cragg, Connelly, Gallop, Johnson, and Tracy are not entitled to summary judgment on plaintiff's excessive force claims. Genuine disputes of material fact remain as to the nature of the force employed and the extent of plaintiff's resistance. In so recommending, however, the court notes that plaintiff's claim may only proceed to the extent his claims relate to force used after plaintiff was subdued and in handcuffs. Plaintiff's allegations regarding defendants' pre-handcuffing use of the canine are barred by *Heck*.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motions for summary judgment (#45, 47) be **DENIED.**

**DATED:** April 8, 2016.

_____
**UNITED STATES MAGISTRATE JUDGE**